IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAVID BROWN                                                                                           PLAINTIFF

v.                                  Case No. 1:12-cv-00024-KGB

PAUL BERHNDT, CROWN POINT TIME SHARING, INC.,
CROWN POINT COUNCIL OF CO-OWNERS, VICKI WHITED,
CROWN POINT CONDOMINIUM OWNER'S ASSOCIATION                       DEFENDANTS

OPINION AND ORDER

Plaintiff David Brown brings this action against defendants Paul Berhndt, Crown Point Time Sharing, Inc. ("Time Sharing"), the Crown Point Council of Co-Owners, Inc. ("the Council"), Vicki Whited, and Crown Point Condominium Owner's Association ("CPCOA"). He alleges causes of action under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; the Arkansas Fair Housing Act ("AFHA"), Ark. Code Ann. § 16-123-201, *et seq.*; the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101, *et seq.*; and state-law negligence.

This case is currently before the Court on the defendants' motion for summary judgment (Dkt. No. 30). Mr. Brown has responded (Dkt. No. 35), and the defendants have replied (Dkt. No. 38). For the reasons set out below, defendants' motion for summary judgment is granted as to Mr. Brown's claims under the ADA and the FHA, and the Court declines to exercise supplemental jurisdiction over Mr. Brown's state-law claims.

I.     PROCEDURAL HISTORY

Mr. Brown previously filed and nonsuited this lawsuit against Time Sharing, Vicki Whited, and Amy Billingsly. *See* Case No. 1:11-cv-00022-JMM ("*Brown I*"). The complaint in *Brown I* was filed on March 14, 2011 (*Brown I*, Dkt. No. 1).

In *Brown I*, Mr. Brown asserted causes of action under Title III of the ADA, the ACRA, and state-law negligence. On December 8, 2011, Mr. Brown moved to amend his complaint to add claims under the FHA and the AFHA (*Brown I*, Dkt. No. 27). He also sought to add as parties Mr. Berhndt, the Council, and CPCOA. The *Brown I* defendants responded in opposition (*Brown I*, Dkt. No. 28). The Court denied the motion to amend based on Mr. Brown's undue delay and the prejudice to the defendants (*Brown I*, Dkt. No. 30). The Court explained that Mr. Brown became aware of the existence of Mr. Berhndt, the Council, and CPCOA on August 15, 2011, conveyed the need to add additional parties to the defendants on October 21, 2011, yet waited until December 8, 2011, to move to amend his complaint to include the additional defendants.

On December 20, 2011, the same day the Court denied Mr. Brown's motion to amend, Mr. Brown moved to dismiss his case without prejudice under Rule 41 of the Federal Rules of Civil Procedure (*Brown I*, Dkt. No. 31). The Court granted Mr. Brown's motion to dismiss without prejudice on December 28, 2011 (*Brown I*, Dkt. No. 34).

The case at bar ("*Brown II*") began on February 28, 2012, when Mr. Brown refiled his lawsuit against Mr. Berhndt, Time Sharing, the Council, Ms. Whited, and CPCOA (*Brown II*, Dkt. No. 1). For the first time, the *Brown II* complaint alleged against defendants claims under the FHA and the AFHA and added as parties Mr. Berhndt, the Council, and CPCOA. That is, the *Brown II* complaint alleged the additional causes of action and named the additional defendants that Mr. Brown sought unsuccessfully to add in *Brown I*.

By prior Order in the present case, the Court stayed this proceeding as to the Council pursuant to 11 U.S.C § 362 because the Council is currently a debtor in Chapter 11 bankruptcy.

*See* Case No. 1:11-bk-17617-ARE (pending in the United States Bankruptcy Court for the Eastern District of Arkansas). That stay remains in effect.

## II. FACTUAL BACKGROUND

Mr. Brown was on a family vacation at the Crown Point Condominiums, a private resort in Horseshoe Bend, Arkansas, when his feet were allegedly burned by hot bath water. Mr. Brown has a form of spina bifida. As a result, he cannot use his legs and cannot feel his legs below the mid-thigh. On the family vacation, Mr. Brown was traveling with several family members, including his mother, Cynthia Brown, his father, Asa Brown, Jr., his younger sister, Kara, and his niece, Kaiya.[1]

The family secured the week at the Crown Point Condominiums by trading a timeshare owned by Irene Snow, Mr. Brown's maternal grandmother. Ms. Snow could permit certain family members to use her timeshare through her membership in "RCI,"[2] which is a third-party exchange market that allows timeshare owners to trade shares in one resort for shares in other, affiliated resorts. (Dkt. No. 30-1, at 3-6, 8). The parties agree that, in order to gain access to the Crown Point Condominiums, one must be (1) a member of RCI and a timeshare owner or (2) an owner at the property.

After reviewing availability for vacation destinations online, Mr. Brown's mother booked Unit 305 at the Crown Point Condominiums, where the events in question took place. Defendants submit that the booking confirmation indicated that Unit 305 was not wheelchair accessible and also submit that Ms. Whited, who scheduled RCI exchanges for the Crown Point Condominiums and other properties at Horseshoe Bend, told Mr. Brown's mother on March 9,

---

[1] These are the individuals identified by name and relationship in the record. This may not be an exhaustive list of every person on the vacation.

[2] The record does not indicate what the acronym "RCI" stands for. The Court simply identifies the entity as RCI, as the parties have.

2009, that Unit 305 was not wheelchair accessible.  Mr. Brown admits this but asserts that Ms. Whited "also stated that she would determine if the room reserved would be accessible" (Dkt. No. 37, at 5).  Mr. Brown also asserts that his mother "expected to receive an accessible room" (Dkt. No. 37, at 5).  Mr. Brown's mother testified at her deposition that she told Ms. Whited when booking the condo that "the doorway had to be 36 inches and the bathroom had to be accessible" (Dkt. No. 30-1, at 14).  The family checked in to the condo on the evening of March 14, 2009.  When they arrived at Unit 305, maintenance removed the bathroom door from its hinges at Mr. Brown's parents' request.  The family checked out on March 21, 2009.

Both Mr. Brown's mother and father testified by deposition that they each experienced "fluctuation" with the water temperature in the bathroom of the condo.  During the family's stay, however, neither Mr. Brown's mother nor his father notified management of the unexpected changes in the water temperature.

In order to bathe, Mr. Brown checks the water temperature with his hands or elbows as the water fills the bathtub and makes adjustments to the water temperature as necessary.  Mr. Brown alleges that defendants caused him personal injury while he was staying at the Crown Point Condominiums.  He claims that, as a result of statutory violations and common-law negligence, his legs were burned by bath water, he now has MRSA, and he has incurred past and future medical expenses.  He also claims he has suffered mental and emotional distress.

Mr. Brown claims that the injury occurred on March 17, 2009.  On that same day, both of Mr. Brown's parents had previously taken showers in the bathroom in question.  Mr. Brown's father had taken a shower right before Mr. Brown took his bath.  When Mr. Brown's father finished his shower, he left the water temperature where it was comfortable and where it would be about right for Mr. Brown.

Mr. Brown had wheeled himself into the bathroom, undressed, and transferred himself from his wheelchair to the side of the bathtub. Mr. Brown's mother observed him wheel himself into the bathroom and begin drawing water. At this point, she warned Mr. Brown to check continually the water temperature, and if the temperature changed suddenly, she warned him to turn it to cold. Mr. Brown admits that his mother gave him this warning, but he submits that he is "easily confused and has short term memory loss" (Dkt. No. 37, at 2). At this point, Mr. Brown's mother left the condo and went to the nearby lake.

Once Mr. Brown had maneuvered into the bathroom, gotten undressed, and transferred himself to the side of the bathtub, his feet were in the bathtub, and he was sitting on the ledge of the bathtub, where he operated the water before lowering himself into the bathtub to bathe. He alleges that his feet were burned when he was drawing water for a bath inside the condo. Mr. Brown later told his mother that he had checked the water three or four times, and the last time, the water was very hot, so he turned it all the way to cold. He lowered himself down in the water to take a bath when the water was cool. Mr. Brown admits this but asserts that he "had already burned his feet before he got completely into the bathtub" (Dkt. No. 37, at 3).

According to his mother, once Mr. Brown had finished his bath, he wheeled himself out of the condo and joined his parents at the lake. At this point, Mr. Brown's father realized that the soles of Mr. Brown's feet were injured. In the early afternoon of March 17, 2009, Mr. Brown was admitted to the emergency room of the White River Medical Center, where he was diagnosed with second-degree burns to his feet. The Browns did not notify condo management during their stay that Mr. Brown had been injured.

In a letter written to RCI shortly after Mr. Brown's alleged injuries, and based on Mr. Brown's mother's account of the events, Ms. Snow confirmed that Unit 305 was not represented as wheelchair accessible prior to check-in.

The Council declared bankruptcy on November 30, 2011. The Crown Point Condominiums are no longer standing; they were demolished before the Council declared bankruptcy. The land on which the condominiums were located currently is in receivership with the United States Bankruptcy Court for the Eastern District of Arkansas. (Dkt. No. 30-4, at 10-11).

### III.   ANALYSIS

#### A.   TITLE III OF THE ADA

Title III of the ADA prohibits any person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of the individual's disability. *See* 42 U.S.C. § 12182(a); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) ("Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities."). "It is well established that individual claims for damages based on alleged disability discrimination in violation of Title III of the ADA are precluded, and injunctive relief is the only available remedy." *Woods v. Wills*, 400 F. Supp. 2d 1145, 1163 (E.D. Mo. 2005) (citing *Steger*, 228 F.3d at 892 ("The ADA grants a private right of action for injunctive relief to, *inter alia*, 'any person who is being subjected to discrimination on the basis of disability.'") (citing 42 U.S.C. § 12188(a)(1)).

As an initial matter, Mr. Brown concedes that "injunctive relief cannot be given since the condos have been torn down" but asserts that his complaint "asks for restitution in addition to injunctive relief" (Dkt. No. 36, at 1).

This Court concludes that restitution is not a remedy that is available to Mr. Brown under Title III of the ADA. In *Steger*, the Eighth Circuit stated that the "ADA grants a private right of action *for injunctive relief* . . . ." 228 F.3d at 892 (emphasis added). As other courts have recognized, there is an "unbroken skein of cases [that] makes manifest that money damages are not an option for private parties suing under Title III of the ADA." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003); *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000); *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir.1999); *Jairath v. Dyer*, 154 F.3d 1280, 1283 n.7 (11th Cir. 1998)). Specifically, as to restitution, "[a]t bottom, restitution is a retrospective remedy. It is designed to restore funds previously taken. So viewed, restitution does not fit into the taxonomy of 'preventive relief,' which is the only type of relief authorized by section 12188(a)(1). Restitution is, therefore, unavailable in a Title III claim." *Goodwin*, 436 F.3d at 51 (internal citation omitted). *See also Barbosa v. Am. Osteopathic Bd. of Surgery*, No. 3:07-CV-338, 2008 WL 2468483 (S.D. Ohio May 23, 2008) ("The words 'preventive relief' clearly indicate that the relief afforded a person under Title III is proscriptive or forward-looking in nature. Such relief does not include relief meant to compensate for past wrongs such as: restitution, compensatory damages, or punitive damages.").

Mr. Brown has not cited any authority demonstrating that restitution is available under Title III of the ADA. He claims that restitution is a form of equitable relief and cites in support *Frigillana v. Frigillana*, 584 S.W.2d 30 (Ark. 1979). The case Mr. Brown cites is not an ADA case; it is a contract case in which a former wife asked that her former husband be required to compensate her in lieu of providing to her the civil service survivor's benefits to which she was entitled under their property settlement. Her former husband failed to pay her the benefits at the

7

time of his retirement and instead kept the benefits for himself in violation of their property settlement agreement.  Based on the caselaw cited above, the reasoning articulated by other courts that have examined this issue, and the caselaw cited by Mr. Brown, the Court concludes that restitution is not available on Mr. Brown's claims under Title III of the ADA.

Because there is no remedy available to Mr. Brown on his claims under Title III of the ADA, he lacks standing to pursue such claims.  "Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies.  Therefore, the plaintiff's standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *Steger*, 228 F.3d at 892 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).  "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision."  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Moreover, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Here, Mr. Brown's injury cannot be redressed by a favorable decision because there is no remedy available to him on his claims under Title III of the ADA.  He has conceded that injunctive relief is not possible because the Crown Point Condominiums no longer exist. Although "injunctive relief is encouraged where compliance is readily achievable," there is no dispute that injunctive relief is impossible in this situation.  Stated differently, by conceding that injunctive relief is not possible, Mr. Brown has eliminated the only available remedy, meaning there is no way to redress his injuries with a favorable decision on his claims under Title III of the ADA.  Mr. Brown's attempt to save his claims under Title III of the ADA by seeking

restitution is unavailing, as injunctive relief is the sole remedy available to an individual pursuing a claim under Title III of the ADA.

For these reasons, Mr. Brown lacks standing to pursue his claims under Title III of the ADA, and defendants are entitled to summary judgment in their favor on those claims. The Court declines to address the remaining arguments raised by the parties as to Mr. Brown's claims under Title III of the ADA.

### B. FHA

Mr. Brown also alleges that defendants violated the FHA, 42 U.S.C § 3604. The FHA has a two-year statute of limitations. According to 42 U.S.C. § 3613(a)(1)(A), "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."

As discussed above, Mr. Brown in his complaint filed in *Brown I* did not assert a cause of action under the FHA. Although Mr. Brown attempted to amend his complaint in *Brown I* to add claims under the FHA, the Court denied that motion. On February 28, 2012, *Brown II* began with Mr. Brown filing a complaint that asserted a cause of action under the FHA. There is no dispute that the alleged wrongful conduct took place in March 2009. Thus, the alleged discrimination took place almost three years before the filing of *Brown II*. The plain language of the FHA requires that FHA actions be brought "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Mr. Brown's FHA claims were thus asserted beyond the two-year limitations period.

Mr. Brown asserts that his FHA claim in this case is timely because it "relate[s] back to the filing of his original lawsuit" (Dkt. No. 35, at 1). In support of this contention, Mr. Brown

9

cites *White v. City of Chicago*, 631 F. Supp. 2d 1073 (N.D. Ill. Jul. 7, 2009). The decision in *White*, however, does not carry the day because there is controlling caselaw from the Eighth Circuit that is on point. As a starting point, Rule 15(c) of the Federal Rules of Civil Procedure provides the circumstances in which "[a]n amendment to a pleading relates back to the date of the original pleading . . . ." The text of the Rule indicates that relation back applies to an amendment to a pleading, not a new, distinct pleading. In *Morgan Distributing Co. v. Unidynamic Corp.*, the Eighth Circuit determined that Federal Rule of Civil Procedure 15(c)'s "plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment stating a claim which arose out of the conduct set forth in the original pleading." 868 F.2d 992, 994 (8th Cir. 1989).

Although *Morgan Distributing* dealt with state-law contract claims, the Eighth Circuit's interpretation of Rule 15(c) of the Federal Rules of Civil Procedure is applicable in this case. As another district court in this circuit has concluded, "Rule 15 cannot apply to a previously dismissed case." *Farr v. Designer Phosphate & Premix Int'l, Inc.*, 804 F. Supp. 1190, 1195 (D. Neb. 1992) (citing *Morgan Distributing Co.*, 868 F.2d at 994). "This is true because the text of the Rule makes clear that the Rule applies to amendments and not new cases." *Id.* (internal quotation omitted). The relation back doctrine "has application only in instances in which the original pleading is amended; if the amendment satisfies the requirements of the rule, the amended pleading relates back to the original pleading for statute-of-limitations purposes, but the amendment does not relate back to any prior proceeding which is not part of the action in question." Charles Alan Wright, et al., 6A *Fed. Prac. & Proc. Civ.* § 1496 n.2 (citing *Rayo v. State of N.Y.*, 882 F. Supp. 37 (N.D.N.Y. 1995)). Further, this application of Rule 15(c) is in keeping with the Eighth Circuit's determination that, once a dismissal without prejudice is

entered and the pending suit is dismissed, it is as if no suit had ever been filed. *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("The effect of a voluntary dismissal without prejudice. . . 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.'") Moreover, since there is a federal statute of limitations, Arkansas state law tolling and savings statutes are inapplicable. *See Victor Foods, Inc. v. Crossroads Economic Dev. of St. Charles County, Inc.*, 977 F.2d 1224, 1227 (8th Cir. 1992) ("state tolling and savings provisions do not apply when Congress has provided a federal statute of limitation for a federal claim").

Mr. Brown's invocation of the relation-back doctrine does not save his otherwise untimely FHA claims. Because Mr. Brown's FHA claims are barred by the FHA's two-year statute of limitations, defendants are entitled to summary judgment on those claims.

### C. STATE-LAW CLAIMS

In addition to the federal claims discussed above, Mr. Brown brings several claims under Arkansas law, including negligence, discrimination under the ACRA, and discrimination under the AFHA. This Court declines to exercise supplemental jurisdiction over Mr. Brown's state-law claims. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" over a related state-law claim if "the district court has dismissed all claims over which it has original jurisdiction." In *Birchem v. Knights of Columbus*, the Eighth Circuit stated that "[i]n most cases, when federal and state claims are joined and the federal claims are dismissed . . . the pendent state claims are dismissed without prejudice to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" 116 F.3d 310, 314 (8th Cir. 1997).

The period of limitations on Mr. Brown's state-law claims is tolled under 28 U.S.C. § 1367(d) for 30 days after entry of judgment in this case, unless Arkansas gives a longer tolling period.

\* \* \*

For these reasons, defendants' motion for summary judgment is granted as to Mr. Brown's claims under Title III of the ADA and the FHA, and those claims are dismissed with prejudice. As to Mr. Brown's AFHA, ACRA, and state-law negligence claims, the Court declines to exercise supplemental jurisdiction over those claims. The period of limitations on Mr. Brown's state-law claims is tolled under 28 U.S.C. § 1367(d) for 30 days after entry of judgment in this case, unless Arkansas gives a longer tolling period. Judgment will be entered accordingly.

SO ORDERED this the 10th day of April, 2013.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge