**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**DAVID BROWN** **PLAINTIFF**

**v.** **Case No. 1:12-cv-00024-KGB**

**PAUL BERHNDT, CROWN POINT TIME SHARING, INC., CROWN POINT COUNCIL OF CO-OWNERS, VICKI WHITED, CROWN POINT CONDOMINIUM OWNER'S ASSOCIATION** **DEFENDANTS**

**SUBSTITUTED OPINION AND ORDER**

Plaintiff David Brown brings this action against defendants Paul Berhndt, Crown Point Time Sharing, Inc. ("Time Sharing"), the Crown Point Council of Co-Owners, Inc. ("the Council"), Vicki Whited, and Crown Point Condominium Owner's Association ("CPCOA"). He alleges causes of action under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; the Arkansas Fair Housing Act ("AFHA"), Ark. Code Ann. § 16-123-201, *et seq.*; the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101, *et seq.*; and state-law negligence.

This case is currently before the Court on the defendants' motion for summary judgment (Dkt. No. 30). Mr. Brown has responded (Dkt. No. 35), and the defendants have replied (Dkt. No. 38).

This matter is stayed as to the Council by virtue of the Council's pending bankruptcy and pursuant to prior order of this Court (Dkt. No. 23). The Council declared bankruptcy on November 30, 2011, and the matter remains pending in the United States Bankruptcy Court for the Eastern District of Arkansas (Dkt. No. 30-4, at 10-11). No party has informed this Court that leave has been obtained from the bankruptcy court permitting this Court to rule on the claims against the Council, and no party has addressed whether this Court has authority to rule on those claims.

For the reasons set out below, defendants' motion for summary judgment is granted as to Mr. Brown's claims under the ADA and the FHA against separate defendants Mr. Berhndt, Time Sharing, Ms. Whited, and CPCOA (collectively "separate defendants"). The Court directs the parties to brief certain issues as set forth below related to the claims against the Council and the remaining state-law claims as against all defendants.

## I. PROCEDURAL HISTORY

Mr. Brown previously filed and nonsuited this lawsuit against Time Sharing, Vicki Whited, and Amy Billingsly. *See* Case No. 1:11-cv-00022-JMM ("*Brown I*"). The complaint in *Brown I* was filed on March 14, 2011 (*Brown I*, Dkt. No. 1).

In *Brown I*, Mr. Brown asserted causes of action under Title III of the ADA, the ACRA, and state-law negligence. On December 8, 2011, Mr. Brown moved to amend his complaint to add claims under the FHA and the AFHA (*Brown I*, Dkt. No. 27). He also sought to add as parties Mr. Berhndt, the Council, and CPCOA. The *Brown I* defendants responded in opposition (*Brown I*, Dkt. No. 28). The Court denied the motion to amend based on Mr. Brown's undue delay and the prejudice to the defendants (*Brown I*, Dkt. No. 30). The Court explained that Mr. Brown became aware of the existence of Mr. Berhndt, the Council, and CPCOA on August 15, 2011, conveyed the need to add additional parties to the defendants on October 21, 2011, yet waited until December 8, 2011, to move to amend his complaint to include the additional defendants.

On December 20, 2011, the same day the Court denied Mr. Brown's motion to amend, Mr. Brown moved to dismiss his case without prejudice under Rule 41 of the Federal Rules of Civil Procedure (*Brown I*, Dkt. No. 31). The Court granted Mr. Brown's motion to dismiss without prejudice on December 28, 2011 (*Brown I*, Dkt. No. 34).

The case at bar ("*Brown II*") began on February 28, 2012, when Mr. Brown refiled his lawsuit against Mr. Berhndt, Time Sharing, the Council, Ms. Whited, and CPCOA (*Brown II*, Dkt. No. 1). For the first time, the *Brown II* complaint alleged against defendants claims under the FHA and the AFHA and added as parties Mr. Berhndt, the Council, and CPCOA. That is, the *Brown II* complaint alleged the additional causes of action and named the additional defendants that Mr. Brown sought unsuccessfully to add in *Brown I*.

By prior Order in the present case, the Court stayed this proceeding as to the Council pursuant to 11 U.S.C § 362 because the Council is currently a debtor in Chapter 11 bankruptcy. *See* Case No. 1:11-bk-17617-ARE (pending in the United States Bankruptcy Court for the Eastern District of Arkansas). That stay remains in effect.

## II. FACTUAL BACKGROUND

Mr. Brown was on a family vacation at the Crown Point Condominiums, a private resort in Horseshoe Bend, Arkansas, when his feet were allegedly burned by hot bath water. Mr. Brown has a form of spina bifida. As a result, he cannot use his legs and cannot feel his legs below the mid-thigh. On the family vacation, Mr. Brown was traveling with several family members, including his mother, Cynthia Brown, his father, Asa Brown, Jr., his younger sister, Kara, and his niece, Kaiya.[1]

The family secured the week at the Crown Point Condominiums by trading a timeshare owned by Irene Snow, Mr. Brown's maternal grandmother. Ms. Snow could permit certain family members to use her timeshare through her membership in "RCI,"[2] which is a third-party exchange market that allows timeshare owners to trade shares in one resort for shares in other,

[1] These are the individuals identified by name and relationship in the record. This may not be an exhaustive list of every person on the vacation.

[2] The record does not indicate what the acronym "RCI" stands for. The Court simply identifies the entity as RCI, as the parties have.

affiliated resorts. (Dkt. No. 30-1, at 3-6, 8). The parties agree that, in order to gain access to the Crown Point Condominiums, one must be (1) a member of RCI and a timeshare owner or (2) an owner at the property.

After reviewing availability for vacation destinations online, Mr. Brown's mother booked Unit 305 at the Crown Point Condominiums, where the events in question took place. Defendants submit that the booking confirmation indicated that Unit 305 was not wheelchair accessible and also submit that Ms. Whited, who scheduled RCI exchanges for the Crown Point Condominiums and other properties at Horseshoe Bend, told Mr. Brown's mother on March 9, 2009, that Unit 305 was not wheelchair accessible. Mr. Brown admits this but asserts that Ms. Whited "also stated that she would determine if the room reserved would be accessible" (Dkt. No. 37, at 5). Mr. Brown also asserts that his mother "expected to receive an accessible room" (Dkt. No. 37, at 5). Mr. Brown's mother testified at her deposition that she told Ms. Whited when booking the condo that "the doorway had to be 36 inches and the bathroom had to be accessible" (Dkt. No. 30-1, at 14). The family checked in to the condo on the evening of March 14, 2009. When they arrived at Unit 305, maintenance removed the bathroom door from its hinges at Mr. Brown's parents' request. The family checked out on March 21, 2009.

Both Mr. Brown's mother and father testified by deposition that they each experienced "fluctuation" with the water temperature in the bathroom of the condo. During the family's stay, however, neither Mr. Brown's mother nor his father notified management of the unexpected changes in the water temperature.

In order to bathe, Mr. Brown checks the water temperature with his hands or elbows as the water fills the bathtub and makes adjustments to the water temperature as necessary. Mr. Brown alleges that defendants caused him personal injury while he was staying at the Crown

Point Condominiums. He claims that, as a result of statutory violations and common-law negligence, his legs were burned by bath water, he now has MRSA, and he has incurred past and future medical expenses. He also claims he has suffered mental and emotional distress.

Mr. Brown claims that the injury occurred on March 17, 2009. On that same day, both of Mr. Brown's parents had previously taken showers in the bathroom in question. Mr. Brown's father had taken a shower right before Mr. Brown took his bath. When Mr. Brown's father finished his shower, he left the water temperature where it was comfortable and where it would be about right for Mr. Brown.

Mr. Brown had wheeled himself into the bathroom, undressed, and transferred himself from his wheelchair to the side of the bathtub. Mr. Brown's mother observed him wheel himself into the bathroom and begin drawing water. At this point, she warned Mr. Brown to check continually the water temperature, and if the temperature changed suddenly, she warned him to turn it to cold. Mr. Brown admits that his mother gave him this warning, but he submits that he is "easily confused and has short term memory loss" (Dkt. No. 37, at 2). At this point, Mr. Brown's mother left the condo and went to the nearby lake.

Once Mr. Brown had maneuvered into the bathroom, gotten undressed, and transferred himself to the side of the bathtub, his feet were in the bathtub, and he was sitting on the ledge of the bathtub, where he operated the water before lowering himself into the bathtub to bathe. He alleges that his feet were burned when he was drawing water for a bath inside the condo. Mr. Brown later told his mother that he had checked the water three or four times, and the last time, the water was very hot, so he turned it all the way to cold. He lowered himself down in the water to take a bath when the water was cool. Mr. Brown admits this but asserts that he "had already burned his feet before he got completely into the bathtub" (Dkt. No. 37, at 3).

According to his mother, once Mr. Brown had finished his bath, he wheeled himself out of the condo and joined his parents at the lake. At this point, Mr. Brown's father realized that the soles of Mr. Brown's feet were injured. In the early afternoon of March 17, 2009, Mr. Brown was admitted to the emergency room of the White River Medical Center, where he was diagnosed with second-degree burns to his feet. The Browns did not notify condo management during their stay that Mr. Brown had been injured.

In a letter written to RCI shortly after Mr. Brown's alleged injuries, and based on Mr. Brown's mother's account of the events, Ms. Snow confirmed that Unit 305 was not represented as wheelchair accessible prior to check-in.

The Council declared bankruptcy on November 30, 2011. The Crown Point Condominiums are no longer standing; they were demolished before the Council declared bankruptcy. The land on which the condominiums were located currently is in receivership with the United States Bankruptcy Court for the Eastern District of Arkansas. (Dkt. No. 30-4, at 10-11).

Defendants maintain that the Council is a not-for-profit Arkansas corporation and that CPCOA, the unincorporated entity created by the Council, owned and managed these condominiums. In response to this allegation, Mr. Brown admits "this is reflected by deposition testimony; however, [Mr. Brown] cannot confirm or deny that this is a factual matter" (Dkt. 37, at 4). Defendants also maintain that the Council came into existence in 1983 when the developer of the condominiums, Time Sharing, had sold enough units that it no longer retained a controlling interest and that Time Sharing had no ownership or management interest in Crown Point Condominiums when the Browns stayed there. In response, Mr. Brown admits "that this is

reflected by deposition testimony; however, [Mr. Brown] cannot confirm or deny that this is a factual matter" (Dkt. No. 37, at 4).

## III. ANALYSIS

### A. TITLE III OF THE ADA

Title III of the ADA prohibits any person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of the individual's disability. *See* 42 U.S.C. § 12182(a); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) ("Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities."). "It is well established that individual claims for damages based on alleged disability discrimination in violation of Title III of the ADA are precluded, and injunctive relief is the only available remedy." *Woods v. Wills*, 400 F. Supp. 2d 1145, 1163 (E.D. Mo. 2005) (citing *Steger*, 228 F.3d at 892 ("The ADA grants a private right of action for injunctive relief to, *inter alia*, 'any person who is being subjected to discrimination on the basis of disability.'") (citing 42 U.S.C. § 12188(a)(1)).

As an initial matter, Mr. Brown concedes that "injunctive relief cannot be given since the condos have been torn down" but asserts that his complaint "asks for restitution in addition to injunctive relief" (Dkt. No. 36, at 1).

This Court concludes that restitution is not a remedy that is available to Mr. Brown under Title III of the ADA. In *Steger*, the Eighth Circuit stated that the "ADA grants a private right of action *for injunctive relief* . . . ." 228 F.3d at 892 (emphasis added). As other courts have recognized, there is an "unbroken skein of cases [that] makes manifest that money damages are not an option for private parties suing under Title III of the ADA." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir.

2004); *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003); *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000); *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir.1999); *Jairath v. Dyer*, 154 F.3d 1280, 1283 n.7 (11th Cir. 1998)). Specifically, as to restitution, "[a]t bottom, restitution is a retrospective remedy. It is designed to restore funds previously taken. So viewed, restitution does not fit into the taxonomy of 'preventive relief,' which is the only type of relief authorized by section 12188(a)(1). Restitution is, therefore, unavailable in a Title III claim." *Goodwin*, 436 F.3d at 51 (internal citation omitted). *See also Barbosa v. Am. Osteopathic Bd. of Surgery*, No. 3:07-CV-338, 2008 WL 2468483 (S.D. Ohio May 23, 2008) ("The words 'preventive relief' clearly indicate that the relief afforded a person under Title III is proscriptive or forward-looking in nature. Such relief does not include relief meant to compensate for past wrongs such as: restitution, compensatory damages, or punitive damages.").

Mr. Brown has not cited any authority demonstrating that restitution is available under Title III of the ADA. He claims that restitution is a form of equitable relief and cites in support *Frigillana v. Frigillana*, 584 S.W.2d 30 (Ark. 1979). The case Mr. Brown cites is not an ADA case; it is a contract case in which a former wife asked that her former husband be required to compensate her in lieu of providing to her the civil service survivor's benefits to which she was entitled under their property settlement. Her former husband failed to pay her the benefits at the time of his retirement and instead kept the benefits for himself in violation of their property settlement agreement. Based on the caselaw cited above, the reasoning articulated by other courts that have examined this issue, and the caselaw cited by Mr. Brown, the Court concludes that restitution is not available on Mr. Brown's claims under Title III of the ADA.

Because there is no remedy available to Mr. Brown on his claims under Title III of the ADA, he lacks standing to pursue such claims. "Federal jurisdiction is limited by Article III, § 2,

of the U.S. Constitution to actual cases and controversies. Therefore, the plaintiff's standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Steger*, 228 F.3d at 892 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Moreover, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Here, Mr. Brown's injury cannot be redressed by a favorable decision because there is no remedy available to him on his claims under Title III of the ADA. He has conceded that injunctive relief is not possible because the Crown Point Condominiums no longer exist. Although "injunctive relief is encouraged where compliance is readily achievable," there is no dispute that injunctive relief is impossible in this situation. Stated differently, by conceding that injunctive relief is not possible, Mr. Brown has eliminated the only available remedy, meaning there is no way to redress his injuries with a favorable decision on his claims under Title III of the ADA. Mr. Brown's attempt to save his claims under Title III of the ADA by seeking restitution is unavailing, as injunctive relief is the sole remedy available to an individual pursuing a claim under Title III of the ADA.

For these reasons, Mr. Brown lacks standing to pursue his claims under Title III of the ADA, and separate defendants are entitled to summary judgment in their favor on those claims. The Court declines to address the remaining arguments raised by the parties as to Mr. Brown's claims under Title III of the ADA. This ruling does not apply at this point to the Council

because Mr. Brown's claims against the Council are stayed and no party has requested that the bankruptcy court issue an order modifying the stay to permit this Court to rule in this case or addressed whether this Court has authority to rule on those claims against the Council. *See, e.g.*, *Amadou v. Ryan*, Civil No. 08-30 (MJD/JJK), 2010 WL 1848501 (D. Minn. May 6, 2010).

**B. FHA**

Mr. Brown also alleges that defendants violated the FHA, 42 U.S.C § 3604. The FHA has a two-year statute of limitations. According to 42 U.S.C. § 3613(a)(1)(A), "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."

As discussed above, Mr. Brown in his complaint filed in *Brown I* did not assert a cause of action under the FHA. Although Mr. Brown attempted to amend his complaint in *Brown I* to add claims under the FHA, the Court denied that motion. On February 28, 2012, *Brown II* began with Mr. Brown filing a complaint that asserted a cause of action under the FHA. There is no dispute that the alleged wrongful conduct took place in March 2009. Thus, the alleged discrimination took place almost three years before the filing of *Brown II*. The plain language of the FHA requires that FHA actions be brought "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Mr. Brown's FHA claims were thus asserted beyond the two-year limitations period.

Mr. Brown asserts that his FHA claim in this case is timely because it "relate[s] back to the filing of his original lawsuit" (Dkt. No. 35, at 1). In support of this contention, Mr. Brown cites *White v. City of Chicago*, 631 F. Supp. 2d 1073 (N.D. Ill. Jul. 7, 2009). The decision in *White*, however, does not carry the day because there is controlling caselaw from the Eighth

Circuit that is on point. As a starting point, Rule 15(c) of the Federal Rules of Civil Procedure provides the circumstances in which "[a]n amendment to a pleading relates back to the date of the original pleading . . . ." The text of the Rule indicates that relation back applies to an amendment to a pleading, not a new, distinct pleading. In *Morgan Distributing Co. v. Unidynamic Corp.*, the Eighth Circuit determined that Federal Rule of Civil Procedure 15(c)'s "plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment stating a claim which arose out of the conduct set forth in the original pleading." 868 F.2d 992, 994 (8th Cir. 1989).

Although *Morgan Distributing* dealt with state-law contract claims, the Eighth Circuit's interpretation of Rule 15(c) of the Federal Rules of Civil Procedure is applicable in this case. As another district court in this circuit has concluded, "Rule 15 cannot apply to a previously dismissed case." *Farr v. Designer Phosphate & Premix Int'l, Inc.*, 804 F. Supp. 1190, 1195 (D. Neb. 1992) (citing *Morgan Distributing Co.*, 868 F.2d at 994). "This is true because the text of the Rule makes clear that the Rule applies to amendments and not new cases." *Id.* (internal quotation omitted). The relation back doctrine "has application only in instances in which the original pleading is amended; if the amendment satisfies the requirements of the rule, the amended pleading relates back to the original pleading for statute-of-limitations purposes, but the amendment does not relate back to any prior proceeding which is not part of the action in question." Charles Alan Wright, et al., 6A *Fed. Prac. & Proc. Civ.* § 1496 n.2 (citing *Rayo v. State of N.Y.*, 882 F. Supp. 37 (N.D.N.Y. 1995)). Further, this application of Rule 15(c) is in keeping with the Eighth Circuit's determination that, once a dismissal without prejudice is entered and the pending suit is dismissed, it is as if no suit had ever been filed. *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("The effect of a voluntary dismissal without prejudice. . . 'is to

render the proceedings a nullity and leave the parties as if the action had never been brought.'") Moreover, since there is a federal statute of limitations, Arkansas state law tolling and savings statutes are inapplicable. *See Victor Foods, Inc. v. Crossroads Economic Dev. of St. Charles County, Inc.*, 977 F.2d 1224, 1227 (8th Cir. 1992) ("state tolling and savings provisions do not apply when Congress has provided a federal statute of limitation for a federal claim").

Mr. Brown's invocation of the relation-back doctrine does not save his otherwise untimely FHA claims. Because Mr. Brown's FHA claims are barred by the FHA's two-year statute of limitations, separate defendants are entitled to summary judgment on those claims. This ruling does not apply at this point to the Council because Mr. Brown's claims against the Council are stayed and no party has requested that the bankruptcy court issue an order modifying the stay to permit this Court to rule in this case or addressed whether this Court has authority to rule on those claims against the Council.

**C. REMAINING STATE-LAW CLAIMS**

When Mr. Brown filed his complaint, he alleged federal claims, along with several claims under Arkansas law, including negligence, discrimination under the ACRA, and discrimination under the AFHA. This Court determines it has supplemental jurisdiction over his state law claims. 28 U.S.C. § 1367. Mr. Brown asserts in his complaint that the Court also has diversity jurisdiction over these claims. In support of this contention, he cites in his complaint 28 U.S.C. § 1334.

**1. Bankruptcy Jurisdiction**

The statutory provision Mr. Brown cites relates to bankruptcy cases and proceedings. One of the named defendants – the Council -- is in bankruptcy. Mr. Brown has not demonstrated that he has the bankruptcy court's permission for relief from the stay to bring this action against

the Council. Therefore, this matter is stayed as to the debtor, the Council, pursuant to prior order of this Court (Dkt. No. 23). The Council declared bankruptcy on November 30, 2011, and the matter remains pending in the United States Bankruptcy Court for the Eastern District of Arkansas (Dkt. No. 30-4, at 10-11). The bankruptcy court has jurisdiction over the bankruptcy matter pursuant to Local Rule 83.1 which provides for automatic referral of "[a]ll cases and proceedings arising under Title 11 of the United States Code or arising in or related to a case under Title 11, brought pursuant to 28 U.S.C. § 1334, § 1412, or § 1452, except personal injury or wrongful death tort claims. . . ."

To the extent 28 U.S.C. § 1334 applies to this action, which the Court questions, this is not a case "arising under" or "arising in" title 11. *See In re Williams*, 256 B.R. 885, 891 (8th Cir. 2001) (determining that "arising under" applies to proceedings that involve causes of action expressly created or determined by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers, section 544 avoidance actions, dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy and "arising in" generally refers to administrative matters that would have no existence but for the fact that a bankruptcy case was filed). Even if a party were to argue and this Court were to assume that this action is "related to a case under title 11," which the Court also questions, nothing in the statute "prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

To determine whether permissive abstention is appropriate, courts consider the following factors:

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of the applicable law;

(4) the present of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

*Stabler v. Beyers (In re Stabler)*, 418 B.R. 764, 769 (B.A.P. 8th Cir. 2009).

Here, the Court directs the parties to brief whether 28 U.S.C. § 1334 applies and, if so, whether these factors favor permissive abstention.

**2. Diversity Jurisdiction**

As for diversity jurisdiction, 28 U.S.C. § 1332 governs and, in this case, requires an amount in controversy that exceeds $75,000.00 exclusive of interest and costs and that the suit be between citizens of different states. Mr. Brown alleges an amount in controversy that satisfies the requirement (Dkt. No. 1, ¶11). The Court is not convinced that, on this record, Mr. Brown has satisfied his burden of establishing diversity based on citizenship of the defendants.

As an initial matter, the objection that a federal court lacks subject matter jurisdiction can be raised by a court "on its own initiative . . . at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant . . . and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (internal citations omitted).

Statutes such as 28 U.S.C. § 1332 which confers diversity jurisdiction upon the federal courts are to be strictly construed. *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942). "Where jurisdiction is based on diversity of citizenship, the pleadings, to establish diversity, must set forth with specificity the citizenship of the parties." *Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990). The Court may consider whether, from a consideration of the record as a whole, diversity of citizenship in fact exists such that the pleadings can be considered to have been amended to conform with the facts. *See, e.g., Neagle v. Johnson*, 381 F.2d 9 (8th Cir. 1967).

Here, Mr. Brown alleges in his complaint that he is a resident and citizen of the state of Texas (Dkt. No. 1, ¶1). He claims that "[e]ach corporate defendant with its principal place of

business in Arkansas was engaged in a joint venture. . . ." (Dkt. No. 1, ¶1). The Court applies this statement to the corporate defendant Time Sharing and the Council and accepts Mr. Brown's allegation as true. Mr. Brown, however, does not identify in his complaint the residence of the individual defendants Paul Berhndt and Vicki Whited nor does he identify the residence of defendants the Council CPCOA.[3]

The record establishes that Mr. Berhndt was served with summons and the complaint at an address in Horseshoe Bend, Arkansas (Dkt. No. 15). Residence does not equate with citizenship for purposes of establishing diversity jurisdiction, *Janzen v. Goos*, 302 F.2d 421, 426 (8th Cir. 1962), but it is evidence to be considered. Ms. Whited was served by warning order and answered (Dkt. Nos. 22, 28); there is nothing in the record regarding her citizenship. The record establishes that Council is a not-for-profit Arkansas corporation and that CPCOA is an unincorporated entity created by the Council (Dkt. 32, ¶13).

"Generally, a district court's diversity jurisdiction in a suit by or against [an unincorporated] entity depends on the citizenship of 'all the members.'" *GMAC Commerical Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 828 (8th Cir. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)). In *Carden*, the Supreme Court specifically rejected "the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members." *Carden*, 494 U.S. at 195. In *GMAC Commercial Credit LLC*, the Eighth Circuit recognized the Supreme Court's repeated refusal to extend the corporation exception to other artificial entities, such as limited partnerships, unincorporated labor unions, limited partnership associations, and joint-stock

[3] In response to these allegations in the complaint, defendants admit that Time Sharing is an Arkansas corporation "and further admit this Court's jurisdiction" but deny "[a]ll remaining material allegations contained in Paragraph 1 of the Plaintiff's Complaint. . . ." (Dkt. No. 25, ¶2).

companies. 357 F.3d at 829 (collecting cases). Here, there is nothing in the record that establishes the citizenship of all the members of the CPCOA, although the record suggests the CPCOA had members (Dkt. 30-4, at 7-8). Mr. Brown does not assert that CPCOA is a nominal party or one for which there is no reasonable basis to predict it will be held liable. *See Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 461 (1980); *Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998). Even if he were willing to agree that CPCOA is a nominal party, that does not resolve the issues as to Ms. Whited.

Because Mr. Brown has failed to set forth with specificity the citizenship of defendants, and because there is no record evidence that establishes it, the Court is unwilling to determine that it has diversity jurisdiction under 28 U.S.C. § 1332. Had the Court examined this issue earlier in the litigation, or had defendants raised the issue, Mr. Brown likely could have addressed the issue by filing an amended complaint setting forth clearly the basis for diversity jurisdiction or by supplementing the record to establish diversity jurisdiction. At this stage in the litigation, the Court directs the parties to brief the issue of whether the Court should allow the record to be reopened and supplemented for the sole purpose of establishing this Court's diversity jurisdiction.

**3. Supplemental Jurisdiction**

Because this Court determines it lacks diversity jurisdiction on the current record and if the Court determines it is not appropriate to allow the record to be reopened and supplemented for the sole purpose of establishing this Court's diversity jurisdiction, the Court must decide whether to exercise supplemental jurisdiction over Mr. Brown's state-law claims. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" over a related state-law claim if "the district court has dismissed all claims over which it has original

jurisdiction." In *Birchem v. Knights of Columbus*, the Eighth Circuit stated that "[i]n most cases, when federal and state claims are joined and the federal claims are dismissed . . . the pendent state claims are dismissed without prejudice to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" 116 F.3d 310, 314 (8th Cir. 1997). The Court directs the parties to brief the issue of whether the Court should decline to exercise supplemental jurisdiction in this instance or whether factors support this Court's retaining supplemental jurisdiction.

* * *

Separate defendants' motion for summary judgment is granted as to Mr. Brown's claims under Title III of the ADA and the FHA, and those claims are dismissed with prejudice as to separate defendants. This ruling does not apply to Mr. Brown's claims against the Council, which are stayed. As to Mr. Brown's AFHA, ACRA, and state-law negligence claims, the Court determines it lacks diversity jurisdiction over these claims under 28 U.S.C. § 1332 on the current record before the Court.

The Court removes this case from the trial docket and directs the parties to brief the following issues:

(1) How the Court should proceed in regard to the Council, which remains in bankruptcy and against which this action is stayed;

(2) Whether 28 U.S.C. § 1334 applies and, if so, whether the Court should exercise permissive abstention;

(3) Whether the Court should allow the record to be reopened and supplemented for the sole purpose of establishing this Court's diversity jurisdiction; and

(4) Whether, if diversity jurisdiction is lacking and supplementation of the record at this stage is not appropriate, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

The Court sets the following briefing schedule for the parties: opening briefs should be filed on or before Friday, May 3, 2013, responses are due ten business days after opening briefs are filed, and replies are due five business days after opening briefs are filed.

SO ORDERED this the 19th day of April, 2013.

Kristine G. Baker
United States District Judge